# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00667-COA

**HOLLIDAY CONSTRUCTION, LLC**                              **APPELLANT**

**v.**

**GEORGE COUNTY, MISSISSIPPI**                                **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/18/2021 |
| TRIAL JUDGE: | HON. KATHY KING JACKSON |
| COURT FROM WHICH APPEALED: | GEORGE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | SAMUEL C. KELLY |
| | ALSTON FRANK LUDWIG |
| ATTORNEYS FOR APPELLEE: | MICHAEL JAMES BENTLEY |
| | ROBERT PAYNE SHEPARD |
| | JAMES STEPHEN FRITZ JR. |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 12/13/2022 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., McDONALD AND McCARTY, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1. Holliday Construction LLC (Holliday) appeals the George County Circuit Court's denial of compensatory damages after the court found that the County's contract for hurricane debris pickup with an out-of-state contractor was null and void. On appeal, Holliday asserts that the circuit court's decision not to award compensatory damages was made without a substantial evidentiary basis and that a hearing should have been held to determine Holliday's compensatory damages. Finding no error, we affirm the circuit court's judgment.

## FACTS AND PROCEDURAL HISTORY

¶2.    On November 16, 2020, George County (the County) began soliciting proposals for disaster debris removal and disposal services as the result of damage caused by Hurricane Zeta.  The County stated in its "Request For Proposals" (RFP) that the purpose of the RFP and subsequent contracting activity was to secure the services of qualified, experienced contractors who were capable of efficiently removing large volumes of disaster-generated debris from a large area in a timely and cost-efficient manner and lawfully disposing of all debris.  The time for submitting proposals ended on December 4, 2020.  The RFP did not require proposers to have a certificate of responsibility.

## A.    Certificate of Responsibility

¶3.    Mississippi Code Annotated section 31-3-21(1) (Rev. 2020) states:

> It shall be unlawful for any person who does not hold a certificate of responsibility issued under this chapter to submit a bid, enter into a contract, or otherwise engage in or continue in this state in the business of a contractor, as defined in this chapter.

"The public policy behind requiring a certificate of responsibility [is] to protect the public from improper construction . . ." and to obtain for the public the best available price through competitive bidding with honest, competent contractors.  *Ace Pipe Cleaning Inc. v. Hemphill Const. Co. Inc.*, 134 So. 3d 799, 806 (¶30) (Miss. Ct. App. 2014) (citing *Ground Control LLC v. Capsco Indus. Inc.*, 120 So. 3d 365, 368 (¶8) (Miss. 2013)).  Contractors obtain a certificate of responsibility from the Mississippi State Board of Contractors (MSBOC) after showing that they are competent to perform the work outlined in specific areas or classifications.  *See* Miss. Code Ann. § 31-3-13(a) (Rev. 2020).

> No contract for public or private projects shall be issued or awarded to any contractor who did not have a current certificate of responsibility issued by

said board at the time of the submission of the bid, or a similar certificate issued by a similar board of another state which recognizes certificates issued by said board. Any contract issued or awarded in violation of this section shall be null and void.

Miss. Code Ann. section 31-3-15 (Rev. 2020).

### B. Contents of George County's RFP

¶4. The RFP also included a provision which informed proposers that the county reserved the right to accept or reject any and all proposals. Specifically, the RFP stated:

> The COUNTY reserves the right to accept or reject any or all proposals, with or without cause, to waive technicalities, or to accept the proposals which, in its sole judgment, best serves the interest of the COUNTY, or to award a contract to the next most qualified proposers if a successful proposer does not execute a contract within thirty (30) days after approval of the selection by the COUNTY. The COUNTY has the right, to cancel a solicitation at any time prior to approval of the award by the COUNTY.

In addition, under the "Evaluation and Contract Award" section, the RFP stated that the County retained the option to waive any irregularity in any proposal, or reject any and all proposals should it be deemed in the County's best interest to do so. The RFP stated that the "award will be made to one or more [p]roposers that the [County] determines can accomplish the requirements set forth in the [RFP] packet in a manner most advantageous to the [County], cost and other factors considered or to reject any and all proposals."

¶5. The following criteria was used by the County staff to evaluate the proposals and make a selection: (1) references from past projects of similar size and scope, (2) qualifications and experience of key staff on similar projects, (3) knowledge of the County and local emergency management needs, (4) cost of services offered, and (5) use of minority- and women-owned business.

3

¶6.     Each proposal submitted was also evaluated and ranked by an evaluation committee. The contract was to be awarded to the most qualified proposer, per the following: "(1) Contractor's Experience/Past Performance (years of experience; similar size projects; experience in debris removal and disposal) – weighted 30%, (2) Proposal/Individual Credentials of Contractor and Team (key staff members; use of minority women owned business; experience with [the Federal Emergency Management Agency (FEMA) or the Mississippi Emergency Management Agency (MEMA)] programs/coordination - weighted 40%, and (3) Price – weighted 30%."

¶7.     The RFP also informed proposers that the project needed to be completed within a certain time frame because FEMA declared that it would reimburse the county for seventy-five percent of the hurricane clean-up costs if the project was completed by June 30, 2021.

      *C.      Directives For Pricing*

¶8.     A "Contractor's Price Proposal" packet was attached to the RFP as "Exhibit B," which contained a price proposal form for proposers to complete and submit to the county with total bid amounts.  It included the following provision: "This price proposal form must be fully completed, signed, and submitted.  No substitute forms will be accepted.  Proposals submitted without this fully completed price proposal will be rejected."  The price proposal form also gave descriptions for the work that was to be done on the project as well as assumed quantities for various categories of debris to be removed.  Proposers were to multiply their proposed unit price by the assumed quantity to generate an estimated price. The unit price and price extension columns in the price proposal form were left blank for proposers to fill in their estimated amounts.

4

¶9.  On November 23, 2020, the County published Addendum 1 to the RFP which revised the estimated quantity of debris listed under the assumed quantity column for certain categories on the price proposal form.  In the initial RFP, the assumed quantity for "site management and grinding of eligible vegetative debris at a Debris Management Site (DMS) provided by the contractor" was 50,000; however, Addendum 1 increased the assumed quantity to 150,000.  "Loading and hauling of eligible vegetative debris reduced by grinding from DMS to an approved landfill" was increased from 12,500 to 38,000.  In addition, "disposal of eligible vegetative debris reduced by grinding at an approved landfill" also was increased from 12,500 to 38,000.

### D.  County's Selection of CTC's Bid

¶10.  On December 14, 2020, the Board of Supervisors considered and evaluated the proposals received.  Custom Tree Care Inc. (CTC), an out-of-state contractor, submitted a total bid of $1,686,613, which the County considered to be the lowest and best bid received.  Holliday submitted the next lowest bid in the total amount of $2,352,050.  However, it was revealed much later in the court proceedings that CTC used the first page of the price proposal form from the original RFP instead of the revised first page of the price proposal form from Addendum 1, which had increased assumed quantities for three of the categories of debris to be removed.  This explained the disparity between CTC's total bid amount and Holliday's total bid amount.[1]

---

[1] Had CTC submitted the correct first page of the revised price proposal form included in Addendum 1, its estimated total bid amount would have been $2,121,863, which was still $230,187 lower than Holliday's bid amount.

¶11.   On December 20, 2020, Holliday sent a letter to the county protesting the award of the contract to CTC.  Holliday asserted that CTC was not qualified nor entitled to the award of the contract because CTC did not hold a certificate of responsibility issued by the MSBOC and required by Mississippi Code Annotated section 31-3-15.[2]  Holliday suggested that the County obtain an opinion from the MSBOC to determine whether or not a certificate was in fact required.

¶12.   The County took the matter under advisement, and on December 21, 2020 met and passed a resolution in response.  In its resolution, the county cited to section 31-3-15, and stated that in applying that statute, along with Mississippi Code Annotated section 31-3-1 (Rev. 2020),[3] which defined "contractor" and "public project" and Mississippi Code

---

[2] Section 31-3-15 states:

No contract for public or private projects shall be issued or awarded to any contractor who did not have a current certificate of responsibility issued by said board at the time of the submission of the bid, or a similar certificate issued by a similar board of another state which recognizes certificates issued by said board.  Any contract issued or awarded in violation of this section shall be null and void.

[3] Section 31-3-1 defines a "contractor" as follows:

Any person contracting or undertaking as prime contractor, subcontractor or sub-subcontractor of any tier to do any erection, building, construction, reconstruction, demolition, repair, maintenance or related work on any public or private project; however, "contractor" shall not include any owner of a dwelling or other structure to be constructed, altered, repaired or improved and not for sale, lease, public use or assembly . . . .

The section defines "public project" as "[a]ny project for erection, building, construction, reconstruction, repair, maintenance or related work which is funded in whole or in part with

6

Annotated section 31-7-1(g) (Rev. 2020),[4] which defined "construction," the County found that the RFP was not for the purpose of building, altering, improving or renovating any public building, public structure, public road, or other public real property. The County further found that the eight items listed in Holliday's protest as allegedly requiring a contractor's license were not a major part of the proposed contract (i.e., were far less than 50% of the value of the contract); that said items were not in the RFP for the purpose of improving any public real property or to create something new to be used and enjoyed by the public for years to come; that the said items listed were merely incident to (and for the purpose of) cleaning up Hurricane Zeta damage and debris; that the said items have been listed in accordance with state law and FEMA guidelines; and, therefore, the said items did not require a contractor's license for the work to be performed in accordance with the proposed contract. The County also found that the RFP and the contract to be awarded were for a service and not for a public project, as contemplated by section 31-3-15. The County denied Holliday's protest and proceeded to award the three-year contract to CTC, with the option to renew for one additional year.[5]

¶13. Holliday sent its own request on December 30, 2020, to the MSBOC requesting that

_____

public funds." *Id*.

[4] Section 31-7-1(g) defines "construction" as "the process of building, altering, improving, renovating or demolishing a public structure, public building, or other public real property. It does not include routine operation, routine repair or regularly scheduled maintenance of existing public structures, public buildings or other public real property."

[5] The written contract between the County and CTC included CTC's price proposal that was submitted with the first page of the price proposal form from the initial RFP instead of the first page of the price proposal form from Addendum 1.

the board provide an opinion as to whether or not a certificate of responsibility was required for the project.

### F. Holliday's Circuit Court Appeal and Complaint

¶14. Prior to receiving a response from the MSBOC, Holliday filed an appeal and complaint in the Circuit Court of George County on January 6, 2021.[6] In its complaint, Holliday alleged that the "[C]ounty's decision to award the contract to CTC had to be overturned because CTC did not hold the required license from the MSBOC." Holliday further argued that the contract award was arbitrary or capricious because it violated clear statutory requirements and was beyond the County's scope or powers. According to Holliday, it was entitled to the award of the contract as the lowest and best, responsive and responsible bidder or, in the alternative, that it was entitled to compensatory damages for its lost profits which Holliday would have earned had the contract been properly awarded. Holliday also requested that the circuit court stay the contract award to CTC or, alternatively, enter a preliminary injunction against the County to keep it from awarding the contract to CTC. Holliday also requested that the court conduct an expedited hearing on the matter.

¶15. On January 8, 2021, Holliday served notice of a hearing on its request to stay the contract, or alternatively, its request for a preliminary injunction. The hearing was set for January 25, 2021.

¶16. The County filed its answer to Holliday's circuit court appeal and "complaint" on January 15, 2021. The County denied that Holliday was entitled to any relief requested. The

---

[6] Although styled as a "complaint and appeal of decision," Holliday did not allege any separate causes of action and merely appealed the County's decision.

County pled that the requirement of a certificate of responsibility found in Mississippi Code Annotated section 31-3-15 did not apply to the work outlined in the RFP and that Holliday had no legal authority (or valid argument) for claiming that it did. In addition, the County argued that if Holliday was seeking an injunction as a civil remedy outside the scope of its appeal, then Holliday failed to state how it would suffer any irreparable injury if such an injunction was not granted. The County attached its December 21, 2020 resolution to its answer.

¶17. On January 20, 2021, Holliday filed a memorandum in support of its complaint further arguing that the County's decision to award the contract to CTC was arbitrary and capricious and beyond the lawful power of the County. Holliday attached an opinion that it received from the MSBOC on January 13, 2021, to its memorandum. In the opinion letter, the MSBOC determined that "a certificate of responsibility was required to perform the scope of work detailed in the RFP specifications because excavation, grading, drainage, and landscaping work, all required a certificate of responsibility when the contract amount exceeded fifty thousand dollars ($50,000.00)."

¶18. The circuit court held a hearing on Holliday's request for stay or in the alternative request for injunction on January 25, 2021. At the hearing, Holliday requested a stay of performance on the contract until the court had an opportunity to consider the appeal. The County argued that there was no authority for the court to grant an injunction. The court took the matter under advisement.

¶19. On February 1, 2021, Holliday filed a motion to amend or supplement the appellate record. Holliday argued that although the record contained portions of CTC's bid, neither

9

CTC's nor Holliday's final, complete bids were included. Holliday stated that the bids, which were part of the County's underlying decision, should be made a part of the record so that the circuit court could consider "all of the information – in its entirety – that was before the County when it reached its decision to award the contract for the project to CTC." The County filed a response to Holliday's motion to amend the appeal record on February 2, 2021. The County argued that Holliday provided no valid reason for why its motion should be granted and that the granting of the motion would only cause delay and expense in the case.

¶20. The circuit court granted Holliday's request for a stay on February 2, 2021.

¶21. On February 4, 2021, the County filed a brief in support of its decision to award the contract to CTC. The County argued that the MSBOC's January 13, 2021 opinion, which was attached to Holliday's memorandum, was not binding legal authority because, unlike the Attorney General, the MSBOC did not have statutory authority to issue an opinion. In addition, the County stated that it had evaluated the work to be completed under MSBOC Rule 5 and the MSBOC order discussed in *Clancy's Lawn Care & Landscaping Inc. v. Mississippi State Board of Contractors*, 707 So. 2d 1080, 1084 (¶¶14-15) (Miss. 1997),[7] and determined that a certificate of responsibility was not required. Holliday countered with a reply brief in support of its "complaint" and appeal on February 17, 2021. Holliday argued that the MSBOC was duly authorized to issue opinions concerning whether a contractor must

_____

[7] That case, which held MSBOC opinions are binding on parties when requested, also references MSBOC Rule 5, which provides a formula whereby cities and counties can assess their projects and determine the need for a certificate of responsibility. *Clancy*, 707 So. 2d at 1084 (¶¶14-15).

be licensed in order to perform certain work. Holliday also argued that the County had misinterpreted *Clancy*.

G. *The Circuit Court's February 23, 2021 Orders*

¶22. On February 23, 2021 the court issued two orders. In one order, the circuit court granted Holliday's motion to amend or supplement the appeal record. The court directed the County to supplement the record with the final, complete bids submitted by Holliday and CTC in addition to the complete record of any actions taken and issues considered on remand. In its second order, titled "Order Of Remand Jurisdiction Retained," the circuit court remanded the matter to the County to either consider the MSBOC's January 13, 2021 opinion (provided in response to Holliday's request) or provide all relevant information regarding the RFP to the MSBOC to obtain an official opinion as to whether a certificate of responsibility was required. The court also stated that its February 2, 2021 order, which granted stay of performance on the contract, was to remain in full force and effect.

¶23. Thereafter, the County decided to request an opinion from the MSBOC and did so on March 2, 2021. However, the County was told that it would not receive a response until mid-April. Desiring not to lose any more time, and in the event that the MSBOC deviated from its order approved in *Clancy* (therefore requiring a certificate of responsibility in this instance), and because the County did not want to face this issue in the future, the County decided to advertise for hurricane clean-up on a long-term contract when and as needed. The County issued a new RFP requiring a certificate of responsibility for this contract and received eight bids, including one from Holliday. However, the County found, as outlined in its April 20, 2021 Resolution, that the lowest and best bid was submitted by AAA General

11

Contractors Inc. (AAA). Because the County knew it needed the court's approval of these actions because a stay was in place, there was no contract immediately executed with AAA. It should be noted that Holliday never sought to enjoin this new bidding procedure or bring it to the attention of the court. Instead, Holliday participated in the re-bidding for the new project.

¶24. The MSBOC responded to the County in an opinion letter dated April 14, 2021. The MSBOC stated that it had established specialty classifications such as "clearing, grubbing and snagging," "excavation, grading and drainage," or "landscaping, grading and beautification" as classifications that cover much of the work described in the request and/or project specifications. Work under these specialty classifications met the definition of contractor and therefore required a certificate of responsibility. The MSBOC determined that storm debris removal, specifically hurricane debris removal involving the use of mechanized equipment other than human labor, met the definition of "contractor" and therefore required a certificate of responsibility when the contract exceeded $50,000 pursuant to Mississippi Code Annotated section 31-3-1.

¶25. In response to the MSBOC opinion letter, the County met on April 19, 2021, and terminated its contract with CTC. The County then awarded the contract to AAA, subject to the circuit court's approval. On April 20, 2021, the County reported these developments to the circuit court and attached a resolution summarizing them. The County informed the court that its consultant who was familiar with FEMA regulations was concerned that if the court determined that the CTC contract was illegal, then FEMA would not reimburse the County for the work done by CTC, and the county would have to pay the full amount owed.

12

The County also pointed out that most of the governmental entities on the coast did not require a certificate of responsibility for contractors doing similar work because MEMA did not require it. The County feared that if the court ruled that the contract with CTC was illegal, then all the other counties might then be responsible for paying back the funds that FEMA had paid to them. The County also requested that the circuit court lift the stay that had stopped the debris removal in the county.

¶26. On April 26, 2021, Holliday filed a response in opposition to the County's report and a motion for partial summary judgment. In the response, Holliday argued that the circuit court had no authority under Mississippi Code Annotated section 11-51-75 (Rev. 2019)[8] to grant the County's request to hire AAA, a new separate contractor. Holliday argued that the court was obligated to either affirm or reverse the County's original decision. Holliday further argued that it was entitled to an award of the remaining unfinished, incomplete original RFP work as well as lost profits on the work CTC had performed instead of Holliday. In the event that the court granted the County's request to award a new long-term contract to AAA, Holliday contended that it was entitled to an award of compensatory and

---

[8] Section 11-51-75(d) states:

The circuit court, as an appellate court, either in term time or in vacation, shall hear and determine the same on the record and shall affirm or reverse the judgment. The circuit court shall enter an order establishing a briefing schedule and a hearing date, if any, for the parties to appear and present oral argument. If the judgment is reversed, the circuit court shall render such judgment or decision as the board of supervisors or the governing authority of the municipality ought to have rendered, and certify the same to the board of supervisors or the governing authority of the municipality. Costs shall be awarded as in other cases.

consequential damages on the work completed by CTC and the unfinished portion of the original RFP work.

H.    *The Circuit Court's April 30, 2021 Order*

¶27.    On April 30, 2021, the circuit court entered an order affirming the County's termination of the contract with CTC.  After reviewing the original RFP and the MSBOC's opinions, the court stated that based on the nature of the work and the amount of the contract, CTC was, in fact, required to have a certificate of responsibility.  Therefore, the court found that the contract between the County and CTC was null and void.  The court also stated that all other actions that had been taken by the County, as reported in its April 20, 2021 Resolution, other than considering whether or not the certificate of responsibility was required, exceeded the court's remand order and thereby voided any proposed contract with AAA.  The court directed the County to consider all other proposals received by December 4, 2020, for the original RFP, and to make a finding accepting or rejecting the previously submitted bids.  The findings and actions of the board of supervisors were to be submitted to the circuit court for review.  Thereafter, should the County decide to reject all the December 4, 2020 bids, the court stated that the County would then have the authority to re-open the bidding process for the same services or make a determination that a different service contract was necessary to serve the best interest of the county.

¶28.    On May 7, 2021, the County filed a report in response to the circuit court's April 30, 2021.  The County attached a resolution to the report also dated May 7, 2021, detailing the actions that had been taken pursuant to the court's order.  In its resolution, the County stated that the board of supervisors had reviewed all the December 4 bids, debated and discussed

14

what the circuit court's order required, and spent more than three hours on the subject.[9] The County recognized that a certificate of responsibility was required which had not been required in the original RFP. The County reported that it planned to reject all proposals and re-advertise for proposals from contractors who obtained a certificate of responsibility number. The County also stated that due to time and cost restraints, it was restricting the remaining Hurricane Zeta work to be done to tasks that were absolutely necessary, and therefore amended the new request for proposals accordingly.

## I.  The Circuit Court's Final Order and Judgment

¶29.  On May 18, 2021, the court entered its final order and judgment. The court stated that although contracting with CTC, a contractor without a certificate of responsibility, was in violation of the law, the action of the Board was not arbitrary and capricious but instead based upon a mistaken reliance on the *Clancy* decision. The court also stated it nor the County was required to award the contract to the next lowest bidder. Instead, the court stated that it was permitted to award the contract to the next lowest bidder or order the County to reject all bids and rebid the project. Considering the fact that the County reserved the right to reject all bids, the significant difference in the monetary amount between CTC and Holliday's bids,[10] and the entry of the stay order, the court found that all the bids should have

---

[9] In the resolution, the County did not submit the specifics of its discussions.

[10] The court stated that Holliday's bid was $665,437 higher than CTC's bid. Holliday contends that if CTC had used the correct bid forms, CTC's bid amount would have been $2,121,863 instead of the reported amount of $1,686,613, which the court relied on. However, even if we look to CTC's corrected bid amount, Holliday's bid was still $230,187 higher than CTC's bid amount.

15

been rejected. The court therefore affirmed the County's May 7, 2021 resolution rejecting all the bids and instructed the County to rebid for the unfinished hurricane debris pickup and removal. The court denied all other requests for relief.

¶30. Holliday now appeals arguing that the circuit court's decision not to award compensatory damages was not based on substantial evidence and that the circuit court should have held a hearing to determine Holliday's compensatory damages.

## STANDARD OF REVIEW

¶31. The Mississippi Supreme Court reviews a decision by a chancery or circuit court concerning an agency or board action by applying the same standard of review that the lower courts are bound to follow. *Miss. Sierra Club Inc. v. Miss. Dep't of Envtl. Quality*, 819 So. 2d 515, 519 (¶15) (Miss. 2002); *see also Hooks v. George County*, 748 So. 2d 678, 680 (¶10) (Miss. 1999). "Our review of a decision by a county board of supervisors is limited." *Preferred Transp. Co. LLC v. Claiborne Cnty. Bd. of Supervisors*, 32 So. 3d 549, 551 (¶5) (Miss. Ct. App. 2010). "We will not set aside the action of the governing body of a municipality unless such action is clearly shown to be arbitrary, capricious, or discriminatory or is illegal or without substantial evidentiary basis." *Id*. "An act is arbitrary and capricious when it is done at pleasure, without reasoned judgment or with disregard for the surrounding facts and circumstances." *Precision Commc'ns Inc. v. Hinds County*, 74 So. 3d 366, 369 (¶9) (Miss. Ct. App. 2011). "Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion or more than a mere scintilla of evidence." *Id*.

## DISCUSSION

¶32.    Holliday argues that it is entitled to compensatory damages.  However, we must first decide whether the County acted in a manner that was arbitrary, capricious or illegal, thus exposing it to liability when it awarded the original contract to CTC.

### I.    Whether the County's award of the original contract to CTC was arbitrary and capricious.

¶33.    Holliday argues that the County's original award of the contract to CTC was arbitrary and capricious because CTC did not hold a certificate of responsibility.  Under Mississippi law, "[a]n act is arbitrary and capricious when it is done at pleasure, without reasoned judgment or with disregard for the surrounding facts and circumstances." *Id*.  In response, the County stated that it relied on the MSBOC order in *Clancy*, a Mississippi Supreme Court case, to determine that a certificate of responsibility was not needed to perform the work outlined in the RFP.

¶34.    In *Clancy*, 707 So. 2d at 1081 (¶4), the City of Ocean Springs, Mississippi issued an RFP for landscape and maintenance work to be done along U.S. Highway 90.  *Id*.  "The scope of the work described by the RFP was to provide pruning, mulching, weeding, fertilizing, insecticide and fungicide treatment, plant replacement, mowing, trimming and litter removal." *Id*.  In response to the advertisement, Clancy submitted a bid of $120,000, and Your Personal Gardener (YPG) submitted a bid of $57,000.  *Id*. at (¶5).  Clancy had a certificate of responsibility issued by the MSBOC, but YPG did not.  *Id*.  The City decided to award the contract to YPG based on a prior MSBOC opinion determining "that no certificate of responsibility was required to do mowing or litter removal." *Id*. at (¶6).

¶35.    In response, Clancy filed an injunction lawsuit against the city and YPG, but the

17

lawsuit was "dismissed after all parties agreed to attend the quarterly meeting of the [MSBOC] to seek a clarification of the board's previous ruling . . . concluding that mowing and litter removal did not require a certificate of responsibility." *Id*. at 1081-82 (¶6). At the meeting, the MSBOC "concluded . . . that work under the classification of Grounds Maintenance [met] the definition of 'contractor' in Miss[issippi] Code Ann[otated] [section] 31-3-1 and therefore required a certificate of responsibility issued by the [MSBOC] . . . ." *Id*. at 1082 (¶6). The MSBOC also entered an order stating,

> [U]nder Rule 5 of the Rules and Regulations of the Board (1) the awarding agency must make a determination of which classification of work covers at least 50% of the total cost of the project; (2) if at least 50% of the total cost of the project constitutes ground maintenance, then a certificate of responsibility is needed; and (3) if at least 50% of the total cost of the project constitutes mowing and/or litter removal, then a certificate of responsibility is not needed.

*Id*. at (¶7).

¶36.    Clancy then appealed from the MSBOC's order to the Jackson County Chancery Court. *Id*. at (¶8). The chancery court held that "the action taken by [the MSBOC] was supported by substantial evidence, was not arbitrary [or] capricious, was within the power of the Board [of Contractors] to make, and did not violate any statutory or constitutional right of Clancy's." *Id*. The chancery court also held that the MSBOC was "within their authority to conclude that mowing and/or litter removal did not require a certificate of responsibility." *Id*.

¶37.    Clancy appealed the chancery court's ruling to the Mississippi Supreme Court arguing that the MSBOC "did not have the authority to determine that mowing and/or litter removal did not require a bidder to have a current certificate of responsibility." *Id*. at 1083 (¶10).

18

The supreme court held that because Mississippi Code Annotated 31-3-13 expressly grants the MSBOC with the "authority to set forth the requirements for a certificate of responsibility and [the authority] to classify the kind of works that a contractor can perform under its certificate of responsibility, then it [was] "necessarily implied," and a "logical necessity," that the board also have the authority to determine what types of work require a contractor to obtain a certificate of responsibility. *Id*. at 1084 (¶15). The supreme court also reviewed and approved the order issued by the MSBOC regarding Rule 5 of the MSBOC Rules and Regulations. In summary, *Clancy* held two things: first, it approved MSBOC Rule 5 that instructed local authorities on how they could determine when a certificate of responsibility was required for a project; and second, when consulted, the MSBOC did have the authority to determine when a certificate of responsibility was needed based on the specifications of the project presented.

¶38. In the present case, Holliday submitted its protest, in which it asserted that a certificate of responsibility was required to complete certain work included in the RFP. The County met and evaluated the work to be done under the contract based on *Clancy* and Rule 5 of the Rules and Regulations of the MSBOC. The County concluded that a certificate of responsibility was not required to perform the work outlined in the RFP. Based on this evaluation, the County proceeded with its award of the contract to CTC. At this point, neither the County nor Holliday had any opinion from the MSBOC.

¶39. In its final order the circuit court held that "while ultimately the original award of the contract to CTC . . . was in violation of the law, the action of the Board was not arbitrary and capricious but based upon a mistaken reliance upon the *Clancy* decision." We agree. There

19

is no evidence in the record to show that the County's reliance on *Clancy* was misplaced. *Clancy* is still good law and does give the County the authority to evaluate the work described in an RFP to determine if a certificate of responsibility is required. Prior to the execution of the contract with CTC, no MSBOC opinion had been rendered. After the County received an opinion from the MSBOC, the County took the appropriate action. Although the County's assessment that a certificate of responsibility was not required was later determined by the MSBOC to be incorrect and thus in violation of the law, the County's actions were not arbitrary and capricious. Therefore, we affirm the circuit court's holding that the County's initial decision to award the contract to CTC was illegal but not arbitrary and capricious.

## II. Whether Holliday was entitled to compensatory damages for the month of work CTC completed on the contract.

¶40. Although the County's original contract with CTC was illegal, that determination, alone, does not entitle Holliday to an award of compensatory damages. Rather, in addition to that determination being made, Holliday was required to show that the County would have awarded it the contract had it not awarded the contract to CTC, and that the contract with CTC was substantially completed, thus precluding Holliday from rebidding on the project. Holliday has not proven either of these latter elements.

¶41. The Mississippi Supreme Court has held that if a project was not substantially completed and a determination was made that the contract was illegally awarded, the circuit court can either decide to (1) award the contract to the next lowest bidder or (2) allow the County to reject all bids and re-advertise for the project. *City of Durant v. Laws Const. Co.*,

20

721 So. 2d 598, 600 (¶4) (Miss. 1998). In *Durant*, the city of Durant "advertised and published for bidders to construct a 100,000 square foot building." *Durant*, 721 So. 2d at 600 (¶5). The City accepted a bid from King Metal Buildings Inc. (King), which failed to include its certificate of responsibility number on the exterior of its bid envelope as required by Mississippi Code Annotated section 31-3-21. *Id*. at 599 (¶2). Laws Construction Company (Laws) submitted a letter protesting the opening of King's bid. *Id*. at 600 (¶7). In response to Law's protest, the alderman and mayor for the City held a meeting. *Id*. at (¶8). At the meeting, the attorney for the City discussed opinions the Attorney General's office had rendered in other cases. *Id*. According to the city attorney, the opinions advised "that under the circumstances, the City could legally award the bid to King" although it had failed to have its certificate of responsibility number listed on its bid envelope. *Id*. However, a field representative, who was employed with the MSBOC for seven years, also spoke at the meeting, and informed the alderman and mayor that "a bid may not be opened without a certificate of responsibility number located on the exterior of the envelope." *Id*. at 601 (¶8). He further stated that he had always advised public bodies not to open bid envelopes that did not have the number located on the exterior of the envelope. *Id*. Despite this admonition of the MSBOC representative, the board of alderman awarded the project to King. *Id*. at (¶9). Laws appealed the City's award to the Holmes County Circuit Court but, by the time the appeal was heard, the work on the project was substantially completed. *Id*. at (¶2).

¶42.    The circuit court held that section 31-3-21 clearly required the certificate of responsibility number on the exterior of the bid envelope and therefore the City had violated a statutory requirement, and thus its action was illegal. *Id*. at (¶11). The circuit court further

21

held that the City had erred in considering King's bid and determined that either Laws would have been entitled to the contract or the City could have rejected all bids. *Id*. However, "[s]ince the project was precluded from being awarded to Laws due to its substantial completion, the circuit court determined that Laws was entitled to recover damages." *Id*. at 605 (¶28). In addition, the circuit court noted that the "City had conceded that it would have accepted Laws' bid and awarded Laws the contract . . . if the city had neither opened nor considered King's bid." *Id*. at 601 (¶11). Therefore, the circuit court awarded Laws a judgment against the City for compensatory damages and attorneys' fees, and the City appealed. *Id*. The Mississippi Supreme Court affirmed the circuit court's determination that the contract was illegally awarded to King, and held that Laws was entitled to damages as measured by the law of contracts. *Id*. at 606 (¶34). In summary, Laws was awarded damages because of the finding that the City had acted illegally, because the work on the project was substantially completed, and because the City conceded that it would have awarded the contract to Laws, as the next lowest bidder. Therefore, the supreme court held that the only relief available to Laws was compensatory damages.

¶43. In this case, however, although the contract was awarded to CTC illegally, the work on the project was not substantially completed and there was no admission by the County or determination by the circuit court that Holliday was entitled to the original RFP contract. Thus, pursuant to *Durant*, the County had the option of awarding the contract to Holliday or rejecting all bids and starting anew. Holliday had the opportunity to bid on the new contract, which included the work remaining from the original contract with CTC, and thus Holliday is not entitled to damages as was Laws in *Durant*.

22

¶44. Holliday incorrectly challenges the authority of the circuit court to order or allow the County to rebid the project. In fact, this court has twice affirmed a circuit court's authority to allow a county to reject all bids and re-advertise for an incomplete project that was illegally awarded.

¶45. In *Preferred*, 32 So. 3d at 554 (¶13), Claiborne County requested competitive proposals for the collection and disposal of solid waste pursuant to Mississippi Code Annotated section 31-7-13(r) (Rev. 2020),[11] and both Preferred Transport Company LLC (PTC) and HomeBase Litter Control, LLC (HomeBase) submitted sealed proposals. *Id*. at 550 (¶2). The County awarded the contract to HomeBase although PTC was the lowest bidder. PTC appealed to Claiborne County Circuit Court arguing that the county's award of the contract to HomeBase "was in violation of statutory authority as the bid award was based on factors not contained in the [RFP]." *Id*. at 550 (¶1). The circuit court agreed with PTC's

---

[11] Section 31-7-13(r) states, in pertinent part:

Any request for proposals when issued shall contain terms and conditions relating to price, financial responsibility, technology, legal responsibilities and other relevant factors as are determined by the governing authority or agency to be appropriate for inclusion; all factors determined relevant by the governing authority or agency or required by this paragraph (r) shall be duly included in the advertisement to elicit proposals. After responses to the request for proposals have been duly received, the governing authority or agency shall select the most qualified proposal or proposals on the basis of price, technology and other relevant factors and from such proposals, but not limited to the terms thereof, negotiate and enter into contracts with one or more of the persons or firms submitting proposals. *If the governing authority or agency deems none of the proposals to be qualified or otherwise acceptable, the request for proposals process may be reinitiated*.

(Emphasis added).

claim that the County had exceeded the statutory authority when it considered factors that were not listed in the RFP. *Id*. at 551 (¶4). Instead of awarding the contract to PTC, the circuit court ordered the County to reopen the request for proposal process to include such factors in the RFP. *Id*. PTC argued to this court that once the circuit court found that the award of the contract to HomeBase was invalid, the circuit court had the statutory authority to award the contract to PTC pursuant to Mississippi Code Annotated section 11-51-75(d), or, alternatively, to award PTC compensatory damages. *Id*. PTC cited *Durant* to support its contention for an award of compensatory damages. *Id*. at 554 (¶15). However, this court held that *Durant* was distinguishable from PTC's case because in *Durant* the contract had been substantially completed by another vendor, and thus it was impossible to award the contract to Laws. *Id*. at (¶15). We also stated that because the contract PTC was disputing was an ongoing service contract, which could have been renewed upon the award of a new contract at the closing of the RFP process, an award of compensatory damages was not warranted. *Id*. at (¶15). Therefore, we denied PTC damages and specifically found no error in the circuit court's order to re-institute the RFP process. *Id*. at 555 (¶17).

¶46. Similarly, in *Precision*, 74 So. 3d at 367 (¶1), this court also affirmed the Hinds County Circuit Court's decision to allow the Hinds County Board of Supervisors (HCBS) to reject all previous bids and re-advertise the contract for the installation of early-warning tornado sirens. In that case, "HCBS published a notice that it was requesting proposals to replace up to fifty-one broken and/or outdated emergency weather sirens." *Id*. at 367 (¶3). HCBS received seven bids in response to its notice. *Id*. at (¶4). HCBS held a special meeting and voted to award the contract to Emergency Dispatch Notification Systems

(EDNS). *Id*. On November 26, 2008, Precision Communications Inc. (PC) appealed to the circuit court after HCBS awarded the contract to EDNS instead of PC. *Id*. In its appeal, PC "requested that the circuit court stay HCBS' award of the contract to EDNS until after the circuit court had ruled on PC's bill of exceptions." *Id*. at 368 (¶5). The circuit court denied PC's motion, and "HCBS and EDNS entered into a contract for the installation of ten of the fifty-one weather sirens." *Id*.

¶47. On July 28, 2009, HCBS moved to dismiss PC's appeal, arguing that it was moot because HCBS had "chosen to rebid the work that [was] the subject of [the] appeal." *Id*. at (¶6). In response, "PC requested that the circuit court stay HCBS' attempt to rebid the project." *Id*. "[T]he circuit court entered an order denying HCBS' motion to dismiss PC's appeal", and "imposed a stay of PC's appeal and remanded the matter to HCBS with instructions to reconsider the previous bids." *Id*. at 368 (¶7). "HCBS provided the circuit court with a copy of a transcript and executive session minutes regarding its reconsideration of all previous bids." *Id*. The minutes reflected that HCBS had been informed that awarding the contract to PC could endanger the grant funding for the project because PC had helped the County secure the funds from the federal government. *Id*. "HCBS informed the circuit court that it had voted to reject all of the bids and rebid the award for early warning sirens." *Id*. at 369 (¶7). After being informed of HCBS's decision, the circuit court "filed [an] order lifting its stay and dismissing PC's appeal." *Id*. at (¶8). The circuit court stated that "the County's ultimate rejection of all bids initially submitted to the County makes moot the appeal before the court." *Id*. PC appealed the circuit court's decision, and this court, relying on *Preferred*, held that because "the circuit court could have ordered HCBS to reject all bids

25

and reopen the request-for-proposals process," it was appropriate to affirm the circuit court's finding that PC's appeal was moot. *Id.* at 371 (¶16).

¶48.　Therefore, in this case, under the holdings of *Preferred* and *Precision*, the circuit court did not act arbitrarily or capriciously when it allowed the County to reject all bids and re-advertise after finding that the County had illegally awarded the contract to CTC. It follows then that the County had the authority to rebid the hurricane debris removal project, and because Holliday had an opportunity to bid on that work, under our reasoning in *Preferred*, no damages were warranted.

¶49.　Holliday also cites *W.G. Yates & Sons Construction Co. v. City of Waveland*, 168 So. 3d 963 (Miss. Ct. App. 2012), in support of its contention that it is entitled to compensatory damages. However, the *Yates* decision, with facts similar to those in *Durant*, actually supports our holding that Holliday is not entitled to damages in this case.

¶50.　In *Yates*, the City advertised for bids for a sewer project on May 14, 2009. *Yates*, 168 So. 3d at 964 (¶2). Yates and Sons Construction Company (Yates) submitted a bid for $9,471,859, and Reynolds Inc. (Reynolds) submitted a bid for $9,356,601. *Id.* "Reynolds and Yates submitted the two lowest bids." *Id.* at (¶3). The City awarded the contract to Reynolds, and Yates appealed to the Hancock Circuit Court, arguing that Reynolds, which was not a resident contractor, had failed to "attach its state's current law related to the state's treatment of non-resident contractors."[12] *Id.* at 967 (¶14). The City had concluded that

---

[12] Mississippi Code Annotated section 31-3-21(3) provides that "a non-resident contractor shall attach a copy of its state's current law related to the treatment of non-resident contractors in that state." *Yates*, 168 So. 3d at 966 (¶14). This law is meant to ensure equal treatment of non-resident bidders in each state.

26

Reynolds was a resident contractor due to its affiliation with another corporation. *Id*. at 965 (¶7). On August 8, 2009, Yates requested that the circuit court stay the contract award to Reynolds, *id*. at 974 (¶61), but on December 18, 2009, the circuit court denied Yates's motion, stating that Yates could seek compensatory damages if the court were wrong. *Id*. at (¶62). The circuit court ultimately dismissed Yates's appeal and affirmed Waveland's decision to award the contract to Reynolds, finding that Reynolds was a resident contractor under Mississippi Code Annotated section 31-3-21(3), and thus was not required to attach its state's laws on non-resident bidding. *Id*. at (¶62).

¶51.    On appeal, this Court held that because Reynolds should not have been treated as a resident contractor, *id*. at 971 (¶40), the City's actions had been arbitrary and capricious. *Id*. at 971 (¶38). We stated that the City's decision to award the sewer project to Reynolds was not supported by substantial evidence because "there [was] no evidence in the record that Waveland's governing authority considered or was even aware of whether Reynolds met the state's public-bid laws." *Id*. at 971 (¶38). With respect to damages, this court found the case to be similar to and applied *Durant*. The contract was bid in May 2009, *id.* at 964 (¶2), and in August 2009, Yates requested that performance on the contract be stayed. *Id*. at 974 (¶61). In December 2009, the circuit court denied Yates request, *id*. at (¶62), and we rendered our opinion on July 12, 2012, over two-and-a-half years after the improper contract had been executed and work on the contract had been performed in the interim. Thus, finding *Durant* applicable, we remanded the case for a hearing on whether Yates was entitled to damages. *Id*. at 675 (¶¶63-65). In the case at hand, unlike in *Yates*, CTC had only completed one month of work on the contract before the court-ordered stay. In addition, Holliday had an

27

opportunity to secure the contract when the County rebid the project, albeit without the circuit court's authority, and again Holliday was outbid. Moreover, according to the circuit court's final order, the County was allowed to reject all bids and rebid the project, thus giving Holliday a third opportunity to secure the contract.

¶52. Finally, Holliday has not shown that it was entitled to an award of the original contract. The County did not concede, as did the City in *Durant*, that it would have accepted Holliday's bid if CTC's had not been considered. When ordered by the circuit court to review the original bids received on December 4, the County ultimately chose to reject all original bids, including Holliday's, which the circuit court found it had the authority to do.

## CONCLUSION

¶53. We affirm the circuit court's ruling that although the CTC contract was illegal, the County had not acted arbitrarily and capriciously. We further hold that the circuit court did not act arbitrarily and capriciously but rather had the authority to allow the County to reject all bids, re-advertise, and allow companies to re-bid for the hurricane debris removal work. Finally, because Holliday failed to show that it was entitled to the original award of the contract, and the work on the project had not been substantially completed, we affirm the circuit court's ruling that Holliday was not entitled to compensatory damages.

¶54. **AFFIRMED.**

**BARNES, C.J., GREENLEE, WESTBROOKS, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLTON, P.J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.**

28